FEDERAL DEPOSIT INSURANCE
CORPORATION, Plaintiff,

v.

George C. MEYER, et al., Defendants.

No. 82 C 2064.

United States District Court,
N.D. Illinois, E.D.

Dec. 23, 1983.

Frederic J. Artwick, Bryan Krakauer, Sidley & Austin, Chicago, Ill., for plaintiff.

Richard M. Furgason, Dreyer, Foote, Streit, Furgason & Slocum, Aurora, Ill., for Meyer.

MEMORANDUM OPINION
AND ORDER

SHADUR, District Judge.

On May 27, 1983 Judge Joel Flaum issued a memorandum opinion that entitled Federal Deposit Insurance Corporation ("FDIC") to entry of a (1) Decree of Foreclosure and Sale on Count I of its Complaint and (2) a Judgment Order on Complaint Count III. On September 9, 1983 this Court (to whom this action had been assigned on Judge Flaum's appointment to our Court of Appeals):

1. dismissed Complaint Count II without prejudice pursuant to the parties' stipulation;

2. signed the Decree and Judgment Order in favor of FDIC; and

3. expressly directed judgment to be entered on Counts I and III under Fed.R. Civ.P. ("Rule") 54(b), finding those counts severable from the counterclaim filed by George C. Meyer ("Meyer") against FDIC.[1]

FDIC now moves to dismiss Meyer's counterclaim under Fed.R.Civ.P. ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated in this memorandum opinion and order, FDIC's motion is denied.

---

1. Meyer's Counterclaim states two counts based upon the same factual situation. Counterclaim Count I is against Drovers National Bank of Chicago ("Drovers") and Count II is against FDIC. FDIC's motion deals only with Count II.

### Facts[2]

In 1973 and 1974 Meyer advanced sums and performed services at the request of several representatives of Drovers in connection with Chicago real estate known as the Arthington Warehouse. Those representatives "assured" Meyer he would be compensated for his services and reimbursed for the sums advanced by him. Though Meyer demanded payment from Drovers and its representative Ken Olson, he has not yet been paid.

In 1978 the Comptroller of the Currency determined Drovers was insolvent, ordered it closed and appointed FDIC as receiver. FDIC in its corporate capacity then purchased certain assets of Drovers and assumed Drovers' obligation to Meyer. FDIC brought the Complaint in its corporate capacity to enforce the ownership interest in Drovers' assets.

### FDIC's Theory

FDIC seeks a legal haven in the dual capacity in which it acts. It says it cannot be liable for Drovers' obligations when wearing its corporate hat.

When a bank is closed due to insolvency, the closing authority can ask that FDIC act as the bank's receiver (Section 1821(e)).[3] Despite such appointment, FDIC in its corporate capacity can also buy the bank's assets to fulfill its function as an insurer of depositors' funds. When FDIC acts both as receiver and as insurer, its purchase of bank assets must be court-approved (Section 1823(d)).

■ FDIC correctly contends courts have upheld the distinction between actions of FDIC as receiver and actions in its corporate capacity as insurer. *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Illinois,* 592 F.2d 364, 367 (7th Cir.1979). Because FDIC sued Meyer solely in its corporate capacity, Meyer's counterclaim can run against FDIC only in that same capacity, not as receiver.

Congress enacted Section 1823(e) to protect depositors' funds, shielding FDIC against enforcement of "secret" agreements that would defeat FDIC's interest in the purchased assets. *Howell v. Continental Credit Corp.,* 655 F.2d 743, 747 (7th Cir.1981). Section 1823(e) reads:

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

■ That provision clearly allows for FDIC liability if the requisite four conditions are met. Because the pleading posture of this case does not allow the presence or absence of those conditions to be resolved as a matter of *fact,*[4] FDIC's argu-

---

**2.** Familiar principles apply on a motion to dismiss:

    (1) Meyer's "well-pleaded" counterclaim allegations are taken as true and construed most favorably to him ("well-pleaded" is of course simply a legal concept, implying no value judgment as to the quality of drafting reflected by the counterclaim).

    (2) If Meyer could reasonably prove some set of circumstances entitling him to relief, the counterclaim will not be dismissed.

*Mathers Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977). Accordingly this recitation of Meyer's allegations implies no findings of fact.

**3.** All "Section—" citations are to Title 12 of the United States Code.

**4.** Counterclaim ¶ 2 uses the term "assured"—an unlikely way to characterize an undertaking "in writing," as Section 1823(e)(1) requires. Similarly the same paragraph's reference to "representatives of the Drovers" seems at best an inartful description of the "board of directors of the bank or its loan committee," as Section

ment against liability as a matter of *law* is premature.

Cases cited by FDIC in support of its motion are inapposite at this stage of the proceedings. Those cases involve:

1. summary judgment motions where the established *facts* did not support an assumption of contract liability by FDIC: *Citizens Bank & Trust,* 592 F.2d at 368; *FDIC v. Smith,* 466 F.Supp. 843 (N.D. Ga.1979); *FDIC v. Vogel,* 437 F.Supp. 660, 663 (E.D.Wis.1977); *cf. Dasco, Inc. v. American City Bank & Trust Co.,* 429 F.Supp. 767 (D.Nev.1977) (preliminary injunction denied when *facts* established oral agreement, negating substantial likelihood plaintiff would prevail on the merits);

2. motions to dismiss actions sounding in tort, not contract, as to which courts have held Congress did not waive sovereign immunity to such claims: *FDIC v. Rockelman,* 460 F.Supp. 999 (E.D.Wis.1978); *FDIC v. James T. Barry Co.,* 453 F.Supp. 81 (E.D.Wis.1978);[5] or

3. cases that did not reach the issue here: *FDIC v. Ashley,* 585 F.2d 157 (6th Cir.1978); *FDIC v. Godshall,* 558 F.2d 220 (4th Cir.1977); *FDIC v. Glickman,* 450 F.2d 416 (9th Cir.1971); *Freeling v. Sebring,* 296 F.2d 244 (10th Cir.1961); *FDIC v. Design & Development, Inc.,* 73 F.R.D. 442 (E.D.Wis.1977).

### Conclusion

FDIC cannot show on its present Rule 12(b)(6) motion[6] that Meyer could not prevail under Section 1823(e) as a matter of law. FDIC's motion is denied.

---

1823(e)(3) requires. But inferences must now be drawn in favor of Meyer, not against him. One important caveat is in order: Meyer knows what the facts are in that respect. If he knows he cannot satisfy the conditions of Section 1823(e) but persists in his counterclaim, he (and perhaps his counsel, if they too are aware of the true facts) should anticipate being vulnerable to FDIC for attorneys' fees and other expenses it incurs in defending what would then be a plainly invalid claim.

5. One Seventh Circuit case has avoided the issue whether FDIC is subject to a fraud defense, for the established facts there did not support the

---

allegations of fraud. *FDIC v. Lauterbach,* 626 F.2d 1327, 1331 (7th Cir.1980).

6. This Court must decline FDIC's invitation (Mem. 8 n. *) to resolve factual issues on its motion to dismiss. FDIC's counsel blithely suggests this Court take judicial notice of 1978 court proceedings involving Drovers, but neither this Court nor its law clerk is about to search for (and search through) a presumably long-disposed-of file of unknown bulk to find the unidentified document or documents that assertedly support FDIC's position as to non-assumption of Drovers' liabilities.